```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
             EASTERN DIVISION
```

| | |
|---|---|
| DAWN ACKERMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case NO. 10 C 3270<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Plaintiff Dawn Ackerman (hereinafter, "Ackerman") seeks review of the final decision of the Defendant Social Security Commissioner, Michael J. Astrue (hereinafter, the "Commissioner"), who denied her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(2). Ackerman has filed a Motion for Summary Judgment, asking the Court to reverse the Commissioner's final decision and award benefits, or remand the case for further proceedings. For the following reasons, the Court denies Ackerman's Motion and affirms the Commissioner's final decision.

### I. INTRODUCTION

#### A. Procedural Background

Ackerman filed an application for disability insurance benefits in February 2005, alleging an onset of her mental

disabilities on June 15, 2004. On December 18, 2008, Administrative Law Judge Paul Armstrong (hereinafter, the "ALJ") presided over a hearing at which Ackerman and a vocational expert testified. On February 19, 2009, the ALJ found that Ackerman was not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the Commissioner's decision final.

**B.  Factual Background**

1.  Ackerman's Medical History

At the time of the ALJ's decision, Ackerman, an Illinois resident, was 47 years old. She has a high school education and has previously worked as an insurance claims analyst for a medical billing company. The ALJ considered Ackerman's medical evidence between January 2001 and January 2009. Throughout this period, Ackerman made various trips to the emergency room for alcohol abuse and was diagnosed with depression, borderline personality disorder, panic disorder with agoraphobia, bipolar disorder I, and alcohol dependence.

Between January 2001 and February 2005, Dr. Thomas Lelio treated Ackerman for major depression, personality disorder, long-standing alcohol dependence, and binge alcohol abuse. Dr. Lelio performed numerous mental examinations, finding that while Ackerman was consistently depressed, she had experienced no hallucinations and had normal speech, abstract thinking, and intelligence.

In June 2005, state-agency reviewing physician Dr. Carl Hermsmeyer determined that Ackerman's depression, personality disorder, and substance abuse caused mild restrictions of her daily living activities, moderate difficulties in maintaining concentration, and no episodes of decompensation. Ultimately, Dr. Hermsmeyer concluded that Ackerman had the mental capacity to perform simple one- and two-step tasks at a consistent pace.

In August 2005, another state-agency reviewing physician, Dr. Kirk Boyenga, reviewed the record and agreed with Dr. Hermsmeyer's assessment.

In November 2005, Ackerman left Dr. Lelio's care for Dr. Tanmoy Chandra. Dr. Chandra found that Ackerman had no hallucinations or suicidal thoughts, and had intact cognitive functions, memory, judgment, and insight. Dr. Chandra diagnosed bipolar disorder I without features of a panic disorder.

In January 2007, Ackerman was hospitalized after relapsing on her alcohol abuse. In November 2007, Dr. Chandra recommended Ackerman for Social Security disability benefits, noting that she had been consistently free from alcohol, but still exhibited a variety of mood symptoms and suffered from bipolar, panic, and social anxiety disorders.

In December 2007, the ALJ sent Ackerman to Dr. John Brauer for a mental examination. Dr. Brauer diagnosed Ackerman with bipolar disorder and found that she had limitations interacting with others

and understanding complex instructions.  While Dr. Brauer concluded that these were more than slight limitations, he found that Ackerman functioned satisfactorily and understood simple instructions.

In May 2008, Dr. Gregory Hawley began treating Ackerman.  In November and December 2008, Dr. Hawley reported that Ackerman experienced no hallucinations and was a low suicide risk.  In addition, while Dr. Hawley diagnosed her as suffering from mood and bipolar disorder, he found that her thought processes were consistently logical and coherent.  In January 2009, Dr. Hawley recommended Ackerman for Social Security disability benefits because she was permanently disabled and could not work in any occupation due to her bipolar type I and panic disorder with agoraphobia.

## 2. Administrative Hearing

Ackerman testified at her administrative hearing.  She said that she had difficulty concentrating and lost her union job because she made too many errors.  In addition, she testified that without her medication, she had difficulty with anxiety, panic attacks, depression, agoraphobia, and hallucinations.  However, with her medication she was dizzy and sleepy.  She also stated that she would leave her home when necessary to go to the doctor, the gym, and Walmart.

The ALJ also heard testimony from Ackerman's husband, James Ackerman. He testified that Ackerman has had mental problems since 1997 and that she rarely leaves the house, has little concentration, and has had suicidal thoughts.

The ALJ then questioned vocational expert Cheryl Hoiseth ("Hoiseth"), who stated that Ackerman could not return to past work as an insurance claims analyst, and that given her limitations, Ackerman could perform simple, unskilled jobs in the regional economy, including housekeeper, hand packager, and production assembler. Hoiseth said that if Ackerman had occasional panic attacks that put her off task for an hour a week, she would still be eligible for these simple jobs. However, if Ackerman had panic attacks that put her off task for an average of 15 minutes per hour, or if she heard voices that caused her to miss at least two days of work a month, she would be ineligible for any job.

### 3. The ALJ Decision

The ALJ denied Ackerman's disability claim. The ALJ followed the five-step process to evaluate the claim: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. §§ 404.1520 (a)–(f); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). A disability is the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d), 1382c. The ALJ found that Ackerman is not disabled because she does not meet the conditions set forth under Steps Three and Five. Under Step One, the ALJ found that Ackerman had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found that doctor reports supported a finding of severe impairments, including depression, anxiety, and chronic alcoholism.

Moving to Step Three, the ALJ held that Ackerman does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Ackerman has only moderate social and concentration limitations.

Because he found that Ackerman cannot perform any past relevant work, the ALJ refused to decide the case at Step Four. The ALJ found that Ackerman can perform duties that require little exertion, limited to simple, unskilled work, involving public contact and no more than superficial contact with supervisors, co-employees, and the general public. The ALJ gave controlling weight to the opinions of Ackerman's first treating physician, Dr. Lelio, and the state-agency reviewing physicians, Dr. Hermsmeyer and Dr.

Boyenga. Furthermore, the ALJ also found Ackerman's testimony inconsistent and not credible. Therefore, at Step Five, the ALJ found that jobs exist in the national economy that Ackerman can perform. For these reasons, the ALJ ruled that Ackerman is not disabled as defined by the Social Security Act.

## II. LEGAL STANDARD

This Court determines whether substantial evidence supports the ALJ's disability decision. See Terry v. Astrue, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). An ALJ is not required to address every piece of evidence, but must build a "logical bridge between the evidence and his findings and adequately discuss the issues so this Court can assess the validity of the agency's findings." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

## III. ANALYSIS

Ackerman questions several aspects of the ALJ's opinion. First, she argues that the ALJ did not give proper weight to the opinions of her treating physicians in determining whether her medically determinable impairments meet or equal any of the impairments in the listing. Second, she argues that the ALJ improperly analyzed her credibility under Social Security Ruling 96-7p. Third, she argues that the ALJ incorrectly found

that she has the residual functional capacity to perform simple work. Finally, she argues that the ALJ incorrectly found that she was not disabled.

### A. Determining Whether Ackerman's Impairments Meet Any of the Listed Impairments

The ALJ gave controlling weight to the opinions of Ackerman's first treating physician, Dr. Lelio, and the state-agency reviewing physicians, Dr. Hermsmeyer and Dr. Boyenga, who found that Ackerman was consistently depressed, but had no hallucinations, and could perform simple one- and two-step tasks at a consistent pace. Ackerman argues that the ALJ should have given controlling weight to her other treating physicians, Dr. Chandra and Dr. Hawley.

Courts give controlling weight to a treating physician's opinion when acceptable medical clinical and laboratory techniques support it, and it is not inconsistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is "disabled" or "unable to work." Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). The Commissioner determines the issue of disability. 20 C.F.R. § 404.1527(e). Where the ALJ gives a treating physician's opinion little or no weight, the ALJ must cite to a medical report or opinion that is inconsistent with the treating physician's opinion and provide good reasons for the weight accorded to the opinion.

See SSR 96-5p, 1996 WL 374183 (July 2, 1996); Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).

While a treating physician's opinion is important because the physician has potentially observed the claimant over an extended period of time, this involvement may make the opinion unreliable; extended involvement may make a physician sympathetic to his patient when she becomes a claimant and prone to "too quickly find disability." Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007); see also Hofslien, 439 F.3d at 377 ("[M]any physicians bend over backwards to assist a patient in obtaining benefits."). In assessing a treating physician's credibility, an ALJ may consider if the opinion is internally inconsistent or if it is based solely on the patient's subjective complaints; if such a finding is made, the ALJ may discount the opinion. See White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005). The ALJ must determine the weight to accord the treating physician's opinion using (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by the record; (4) consistency of the opinion with the record; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(d)(2); Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2008).

In the instant case, the ALJ thoroughly discussed the available evidence in concluding that Ackerman does not have an

impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In determining the amount of weight to place on Dr. Chandra's and Dr. Hawley's endorsement of Ackerman for disability benefits, the ALJ took issue with the doctors' opinions as they related to subparts (3) and (4) of 20 C.F.R. § 404.1527(d), finding that the doctors' analyses were internally inconsistent and not supported by the record.

The ALJ first considered Ackerman's second treating physician, Dr. Chandra, whose treatment notes from a psychological evaluation from November 14, 2005, showed that Ackerman claimed to have severe mood swings and a fear of being in public. However, Dr. Chandra found that Ackerman had no hallucinations or suicidal thoughts and had intact cognitive functions, memory, judgment, and insight. In October 2007, Dr. Chandra stated that not only was Ackerman calm and bright, but she had remained sober for the past nine months, during which time her anxiety was under control. However, in November 2007, Dr. Chandra recommended Ackerman for Social Security disability benefits.

The ALJ also considered the analysis of Ackerman's third treating physician, Dr. Hawley, who found that Ackerman was disabled due to partial treatment resistance of her bipolar disorder I and panic disorder. However, treatment notes dated November and December 2008 show that Ackerman was only moderately

depressed, had a low suicide risk, and had no reported hallucinations. Other progress reports from Dr. Hawley note that Ackerman had experienced slight improvement of depression and anxiety.

The Court affirms the ALJ's assessment that significant inconsistencies exist in Dr. Chandra's and Dr. Hawley's treatment notes, the medical evidence, and their ultimate recommendations of Ackerman for Social Security disability benefits. Substantial evidence supports the ALJ's finding that Ackerman does not meet or equal the requirements of any impairment. The ALJ considered each of the four criteria separately:

**(1)** The ALJ found that Ackerman has mild restrictions in daily activities. The ALJ relied on Ackerman's testimony with respect to her ability to clean, shop, cook, and take care of her personal needs. In addition, nearly every report by every doctor Ackerman had seen in the past eight years noted that she is consistently well groomed, with good hygiene, posture, and normal speech.

**(2)** The ALJ found that Ackerman has moderate difficulties in social functioning. The ALJ relied on her testimony that she goes to church, plays cards, and enjoys talking to others on the telephone to find that she can get along with others.

**(3)** In determining that Ackerman could maintain concentration, persistence, and pace, the ALJ relied on the

opinions of Dr. Lelio, Dr. Hermsmeyer, and Dr. Boyenga. These physicians found that Ackerman had only moderate social and concentration limitations. In addition, the ALJ looked at the objective test results of Dr. Brauer and found that Ackerman has only moderate limitations understanding and carrying out simple instructions, and can therefore function satisfactorily.

**(4)** The ALJ found that Ackerman had experienced no extended episodes of decompensation. The ALJ relied on the fact that Ackerman failed to tender any evidence of any significant episodes, or temporary increases in symptoms or signs that would have caused any difficulties in performing daily activities, maintaining social relationships, or maintaining concentration, persistence, or pace.

Substantial evidence supports the ALJ's finding that Ackerman's medically determinable impairments do not meet or equal any of the impairments in the listing, and the ALJ gave proper weight to the treating physicians' testimony. This decision is affirmed.

**B. Determining Ackerman's Credibility**

The ALJ also complied with Social Security Ruling 96-7p in evaluating the credibility of Ackerman's testimony, in that he considered the entire case record and gave specific reasons for the weight given to Ackerman's statements. The ALJ examined the consistency of Ackerman's statements, both internally and with other information in the record. SSR 96-7p, 1996 WL 374186

(July 2, 1996). The ALJ concluded that Ackerman's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because they were inconsistent with the medical record.

An ALJ must consider a claimant's subjective claims of pain and symptoms, but a claimant's statements alone do not establish that she is disabled. See Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); 20 C.F.R. § 404.1529(a). An ALJ is in the best position to determine a witness's truthfulness, so his credibility determination will be affirmed unless it is "patently wrong." Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2006). When an ALJ finds a claimant not credible, he must articulate the reasons for this finding. See Clifford, 227 F.3d at 870.

In this case, the ALJ cited two reasons in support of his assessment of the severity of Ackerman's symptoms. First, he concluded that the record did not contain objective medical evidence of a string of panic attacks, fears of being in public, or past suicidal thoughts. The ALJ noted that in November 2005, Dr. Chandra performed an evaluation where Ackerman reported symptoms of severe mood swings and panic attacks with a fear of being in public. However, Dr. Chandra found that Ackerman had no hallucinations or suicidal thoughts and had intact cognitive functions, memory, judgment, and insight.

In addition to Dr. Chandra's evaluation illustrating that Ackerman exhibited normal appearance and intact functions, treatment reports from Dr. Hawley revealed a similar diagnosis. The ALJ relied on reports prepared by Dr. Hawley in November and December 2008, in which Dr. Hawley reported that while Ackerman suffered from mood and bipolar disorders, she was only moderately depressed, had a low suicide risk, and had no reported hallucinations.

The ALJ supported his credibility assessment of Ackerman with evidence sufficiently specific to make clear the weight given to Ackerman's statements and the reasons for that weight. The ALJ built a logical bridge between the evidence and the result. Accordingly, his credibility determination is affirmed.

### C. Determination of Residual Functional Capacity to Perform Light Work

The ALJ's determination of Ackerman's residual functional capacity properly considered the impact of her impairment. The ALJ considered numerous sources, including physicians' opinions, objective test results, and Ackerman's statements, in finding Ackerman capable to perform light work.

A residual functional capacity assessment must include a discussion on how the evidence supports each conclusion. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Mildly to moderately limited claimants who experience deficiencies of concentration,

persistence, or pace can still perform simple and repetitive light work.  See Sims v. Barnhart, 309 F.3d 424, 431 (7th Cir. 2002).

The ALJ gave controlling weight to the opinions of Ackerman's first treating physician, Dr. Lelio, and the state-agency reviewing physicians, Dr. Hermsmeyer and Dr. Boyenga, who found that Ackerman was consistently depressed, but had no hallucinations, and could perform simple one- and two-step tasks at a consistent pace.  In addition, the ALJ looked at the objective test results of Dr. Brauer and found that Ackerman could carry out simple instructions and make judgments on simple work-related decisions.  Finally, the ALJ considered Ackerman's testimony about her interactions with others while at church, playing cards, and talking on the phone, as well as her ability to clean, shop, cook, and take care of her personal needs.  Substantial evidence supports the ALJ's determination that Ackerman has the residual functional capacity to perform light work, so this decision is affirmed.

### D.  Determination of Nondisability

Finally, Ackerman argues that the ALJ erroneously determined that she is not disabled.  However, as discussed above, substantial evidence supports the ALJ's decisions on Steps One through Five of the disability test.  20 C.F.R. §§ 404.1520 (a)-(f).  A negative answer at any one of the steps, other than Step Three, leads to a determination that Ackerman is not disabled.  20 C.F.R. § 404.1520.  The ALJ determined that Ackerman does not meet the criteria for

Step Five, as she can adequately work as a housekeeper, hand packager, and production assembler. Substantial numbers of these jobs exist in the Illinois economy. Substantial evidence supports the ALJ's ruling that Ackerman is not disabled, so the Commissioner's decision is affirmed.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied, and the Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

**DATE:** 4/7/2011